MARY JARMON, Plaintiff-Appellee, v. RANDAL JINKS *et al.*, Defendants-Appellants.

First District (4th Division)    No. 86—3292

Opinion filed December 31, 1987.

Jesmer & Harris, of Chicago (Allen L. Wiederer, of counsel), for appellants.

Griffin & Griffin, Ltd., of Chicago (Rhoda E. Markovitz and David J. Griffin, of counsel), for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

This appeal arises from a personal injury suit filed by plaintiff, Mary Jarmon. Defendant, Randal Jinks, filed a motion to dismiss plaintiff's lawsuit, pursuant to Supreme Court Rule 103(b) (107 Ill. 2d R. 103(b)), for her failure to exercise reasonable diligence to obtain service of summons upon him. The motion was denied and judgment was entered against defendants Jinks and Checker Taxi Company.

Defendants appeal, raising the following issues: (1) whether the trial court erred in denying defendant Jinks' motion to dismiss this lawsuit, pursuant to Supreme Court Rule 103(b); (2) whether the trial court erred in barring the testimony of their medical expert pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220); (3) whether they were deprived of a fair trial by the comment of plaintiff's counsel regarding their failure to provide testimony by their medical expert; (4) whether the trial court committed error by allowing plaintiff's treating physician to testify about X rays, when such X rays were not available in court for cross-examination; and (5) whether the trial court coerced the jury to reach a verdict.

We affirm.

The record shows that on August 20, 1977, while plaintiff Jarmon

was driving her automobile westbound on 78th Street in Chicago, Illinois, she collided with a taxicab being driven northbound by defendant Jinks. The cab was owned by Checker Taxi Company, Inc. (hereinafter Checker). On May 8, 1979, plaintiff filed a lawsuit against Jinks and Checker. At the time plaintiff filed her lawsuit, she caused a summons to be issued, directed at both defendants. On June 5, 1979, summons was served by the sheriff on Checker.

In an effort to locate Jinks, plaintiff's attorney checked the following sources: United States Post Office; Chicagoland telephone directories and information service; and the Secretary of State. A process server was also hired to locate Jinks. Additionally, interrogatories were directed to Checker inquiring as to Jinks' address. Checker did not provide Jinks' address and failed to produce him for deposition as requested. After all the above proved fruitless, on November 14, 1980, plaintiff caused an alias summons to be issued on defendant Jinks. The alias summons was returned "not found" by the sheriff of Cook County. On March 27, 1981, plaintiff had a second alias summons issued which directed the sheriff to serve Jinks at an Aurora address, which was obtained through the Secretary of State. On April 16, 1981, the second alias was returned "not found" by the sheriff of Kane County. The former process server made three more visits to the Aurora address, until it was learned Jinks did not reside there. Thereafter, on October 8, 1982, plaintiff caused Jinks to be served through the Secretary of State.

On December 29, 1982, Jinks filed a motion to dismiss the lawsuit as to him, pursuant to Rule 103(b) for failure of plaintiff to exercise reasonable diligence to obtain service upon him. Plaintiff filed a response to the motion which was verified by her attorney. The court heard arguments on the motion and on January 3, 1983, the court entered an order denying the motion to dismiss. On January 5, 1983, Jinks filed his answer to the complaint.

At trial, plaintiff testified that shortly after the accident she was taken to the emergency room of St. Bernard's Hospital, where she complained of neck and back pain. However, she conceded that during discovery deposition she had only complained about her neck. She was released after X rays were taken and examined. The following day plaintiff was admitted to Franklin Boulevard Hospital, where she received treatment from Dr. Leo Miller for neck and leg pain. After her release on September 2, 1977, plaintiff continued to receive weekly heat treatments on her hip and neck from Dr. Miller.

From October 31 to November 10, 1978, plaintiff was hospitalized at Bethany Methodist Hospital under the care of Dr. Felzardo Belga.

Plaintiff again complained of suffering from pain in her hip and legs. Dr. Belga ordered X rays to be taken of plaintiff's hip and legs. The X rays had been destroyed by hospital personnel and were not available at trial. Dr. Belga testified, over defendants' objection, that the radiology reports indicated that plaintiff had a condition of fragmentation and sclerosis of the left hip joint. Based upon his examination of plaintiff and the X-ray report, Dr. Belga diagnosed plaintiff as afflicted with aseptic necrosis of the left hip joint which was caused by the trauma she sustained in the automobile accident.

Following closing arguments of counsel and instructions by the court, the jury retired to deliberate at about 3:45 p.m. At about 8:25 p.m., the jury sent the following written inquiry to the court: "What is a hang [sic] jury?" The trial judge called the jury into the courtroom and read to them the deadlock instruction. The jury was then sent back for further deliberation. Defense counsel moved for a mistrial; the motion was denied. At 9 p.m., the jury returned a verdict in favor of plaintiff in the sum of $80,000.

I

Defendant Jinks contends that the trial court erred in denying his motion to dismiss this lawsuit as to him, pursuant to Supreme Court Rule 103(b), for failure of plaintiff to exercise reasonable diligence in obtaining service of summons upon him. Defendant claims that almost 17 months elapsed from the expiration of the initial summons before plaintiff issued the first alias summons. After the first alias was returned not found, the plaintiff waited 4 months before causing a second alias summons to issue. After the second alias was returned not found, plaintiff did not cause any further alias summonses to issue.

Defendant Jinks relies on *Mosley v. Spears* (1970), 126 Ill. App. 2d 35, and *Penrod v. Sears, Roebuck & Co.* (1986), 150 Ill. App. 3d 125, to support his contention. In *Mosley* the court held that the plaintiff failed to comply with Rule 103(b) by not serving summons upon defendant until 13 months after the lawsuit was filed. Also, the court found that the defendant in *Mosley* was amenable to service. The Chicago police department records indicated defendant's address and license number. Furthermore, although the court requested defendant's counsel to file affidavits showing diligence to obtain service, he refused. *Mosley*, 126 Ill. App. 2d at 41-42.

Unlike *Mosley*, in the present case plaintiff sought to serve defendant Jinks with summons through various sources from the time the lawsuit was filed until service was obtained through the Secretary of State. Furthermore, plaintiff neither knew Jinks' address nor was

it ever established that he was amenable to service. Finally, plaintiff's counsel filed several affidavits supporting his diligence to obtain service of summons upon Jinks.

Moreover, in *Penrod v. Sears, Roebuck & Co.* (1986), 150 Ill. App. 3d 125, the court held that plaintiff's failure to obtain prompt issuance of summons and to deliver it to the sheriff for service over a seven-month period showed lack of reasonable diligence. The plaintiff in *Penrod* had knowledge of where to locate the defendant, yet he made no inquiries of the clerk's office concerning the summons until four months after the complaint was filed. After plaintiff learned that no summons had issued, he waited three months before having a summons issued.

Contrary to *Penrod*, plaintiff here was not aware of where to locate Jinks. Additionally, plaintiff's counsel had an original summons issued on the date the lawsuit was filed. Thus, defendant's reliance on *Mosley* and *Penrod* is without merit.

Defendant Jinks further relies on *Hanna v. Kelly* (1980), 91 Ill. App. 3d 896, and *Faust v. Michael Reese Hospital & Medical Center* (1978), 61 Ill. App. 3d 233, to support his assertion that Checker's failure to provide his address pursuant to plaintiff's interrogatories does not excuse plaintiff's failure to exercise reasonable diligence to obtain service of process. These cases are distinguishable from the case at bar. The court in *Hanna* found that plaintiff relied on interrogatories directed to codefendants to locate defendant and failed to disclose any other efforts made to discern defendant's whereabouts from outside sources. (*Hanna*, 91 Ill. App. 3d at 899.) However, the record here shows substantial and numerous efforts by plaintiff to locate Jinks, including the United States Post Office, Chicagoland telephone directories and information service, and the Secretary of State. Another important fact distinguishing *Hanna* from the present case is that plaintiff in *Hanna* ultimately obtained the address of the defendant. Here, plaintiff never ascertained where Jinks resided.

The *Faust* court, in *dicta*, stated that codefendant's purposeful conduct in misspelling the name of the street where the unserved defendant resided cannot excuse plaintiff's failure to use other methods to locate her. The facts of *Faust* reveal that the unserved defendant could have been easily located, since her home address was correctly listed in the telephone directory for two years and her professional address was listed for one year. Furthermore, defendant's location was available through telephone subscriber information at all times relevant to the action. *Faust v. Michael Reese Hospital & Medical Center* (1978), 61 Ill. App. 3d 233, 238.

Contrary to the unserved defendant in *Faust*, Jinks never disclosed in his Rule 103(b) motion or at any other time where he could have been located. In addition, when Jinks filed the Rule 103(b) motion, no verified statement was attached showing where he was living or working or if he had moved since the lawsuit's inception. Even Jinks' attorney, who also represented Checker, was not knowledgeable of Jinks' employment status at the cab company. Hence, defendant Jinks' reliance on *Hanna* and *Faust* is misplaced.

Defendant Jinks' insistence that his address was readily obtainable through the commissioner of consumer sales, weights and measures also fails. He claims that since the Chicago Municipal Ordinance requires that every public chauffeur in Chicago provide the commissioner with a change of address when such occurs, plaintiff could have obtained his address through this source. Nevertheless, the record lacks any sworn affidavits or other evidence stating that Jinks was a public chauffeur at any time during this lawsuit.

Rule 103(b) provides, in pertinent part, as follows:

"(b) Dismissal for Lack of Diligence. If the plaintiff fails to exercise reasonable diligence to obtain service prior to the expiration of the applicable statute of limitations, the action as a whole or as to any unserved defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice. In either case the dismissal may be made on the application of any defendant or on the court's own motion." (107 Ill. 2d R. 103(b).)

A motion to dismiss pursuant to Rule 103(b) is addressed to the sound discretion of the trial court, and the reviewing court will not substitute its judgment for that of the trial court absent a showing of an abuse of discretion. (*Hanna v. Kelly* (1980), 91 Ill. App. 3d 896, 898.) "The rule does not set a specific time limit within which a defendant must be served; instead, it places the burden upon plaintiff to demonstrate that he has exercised reasonable diligence to obtain service." (*Faust v. Michael Reese Hospital & Medical Center* (1978), 61 Ill. App. 3d 233, 236.) However, the courts have set forth the following criteria to determine whether plaintiff has met his burden: (1) the length of time used to obtain service; (2) the activities of the plaintiff; (3) any knowledge on the part of the plaintiff of defendant's location; (4) the ease with which defendant's whereabouts could have been ascertained; (5) the actual knowledge by the defendant of the pendency of the action; and (6) special circumstances which would affect the

plaintiff's efforts. *Faust,* 61 Ill. App. 3d at 236; *Alsobrook v. Cote* (1971), 133 Ill. App. 2d 261, 264.

■ In applying these criteria to the present case and relying on the above arguments, we find that plaintiff's efforts to obtain service of summon upon defendant were amply manifested. Therefore, the trial court did not abuse its discretion in failing to dismiss this lawsuit pursuant to Rule 103(b).

## II

Defendants further contend that the trial court erred in barring testimony by their medical expert pursuant to Supreme Court Rule 220. (107 Ill. 2d R. 220.) Defendants assert that there must be a demand for disclosure of an expert witness before an obligation to disclose arises. Consequently, plaintiff did not request disclosure of the identity of defendants' medical expert and, therefore, defendants claim, they had no duty to disclose. They further assert that Rule 220 requires disclosure of an expert witness within 90 days after the substance of his testimony becomes known. Defendants' counsel states that he did not learn of the expert's opinion until October 7, 1986, the day trial commenced, and informed plaintiff's counsel the next day, which is within the 90-day period. Defendants further claim that they were prejudiced by the court's erroneous exclusion of their medical expert's testimony. They insist that the award of damages was predicated upon a finding that plaintiff's hip injury resulted from the accident and that the testimony of Dr. Miller would have revealed otherwise.

■ Rule 220 provides, in pertinent part, as follows:

"(1) *Expert witness.* Where the testimony of experts is reasonably contemplated, the parties will act in good faith to seasonably:

(i) ascertain the identity of such witnesses, and

(ii) obtain from them the opinions upon which they may be requested to testify.

In order to insure fair and equitable preparation for trial by all parties the identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed by that party either within 90 days after the substance of the expert's opinion first becomes known to that party or his counsel or, if the substance of the expert's opinion is then known, at the first pretrial conference in the case, whichever is later. *** Failure to make the disclosure required by this rule or to comply with the discovery contemplated herein will result in disqualification

of the expert as a witness." (107 Ill. 2d R. 220(b).)

Although the rule was not in effect at the time this case was filed, a rule procedural in nature, as Rule 220 is, has retroactive application. (*Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 390.) The primary purpose of the rule is to promote timely and good-faith disclosure of expert witnesses. Additionally, the imposition of sanctions for a party's noncompliance with the rule is within the discretion of the trial court and its decision should not be disturbed absent a showing of abuse of discretion. *Fisher v. G & S Builders* (1986), 147 Ill. App. 3d 168, 172.

In *Fisher*, the appellate court held that the trial court had not abused its discretion in barring plaintiff's medical expert's testimony where his identity was not disclosed by plaintiff's counsel until three days before trial at settlement conference. (*Fisher*, 147 Ill. App. 3d at 172-73.) In the present case, the identity of defendant's expert witness was not disclosed until 1½ days after commencement of plaintiff's case and after four of her six witnesses had testified. As in *Fisher*, the trial court here made no pretrial order upon which all expert witnesses had to be disclosed, yet the *Fisher* court ruled that Rule 220 required the party retaining the expert to disclose his identity. Hence, this court is in accord with the holding of *Fisher*.

Additionally, defendants' argument that they disclosed their expert witness within the 90-day time limit as set forth in the rule also fails. Defendants' argument overlooks the purpose of the promulgation of Rule 220. The rule was enacted to "facilitate trial preparation and the evaluation of claims by eliminating the last minute disclosure of experts on the courthouse steps or during the course of trial." (107 Ill. 2d R. 220, Committee Comments.) The rule specifically contemplates good faith on the part of all parties and that a "timely and conscientious effort to comply is required." 107 Ill. 2d R. 220(b), Committee Comments.

■ Clearly defendants' counsel's behavior was not exemplary of "good faith," or "conscientious effort." The record shows that defendants' counsel was aware that plaintiff, at her deposition on May 4, 1983, was claiming her hip injury resulted from the automobile accident. Counsel was also put on notice by plaintiff's responses to interrogatories that she was alleging her hip injury resulted from the accident. However, counsel failed to retain an expert to challenge plaintiff's claim. Finally, barring Dr. Miller's testimony was not unduly prejudicial to defendants because the trial court permitted defendants to bring in the expert testimony of Dr. Morganstern, a consultant who had been hired by Dr. Belga to examine plaintiff.

Defendants stated that Dr. Morganstern's testimony would be synonymous to that of Dr. Miller in stating that plaintiff's hip injury did not result from the accident. Nevertheless, defendants' counsel decided not to call Dr. Morganstern, although he had successfully subpoenaed him. Since defendants had properly subpoenaed an expert, they cannot now claim prejudice based on their own decision. Accordingly, the trial did not abuse its discretion, but acted in accordance with Rule 220, in disqualifying Dr. Miller's expert testimony.

## III

Defendants' next contention is that they were denied a fair trial by plaintiff's counsel's comment that defendants did not have a medical expert. Defendants claim that it was improper for plaintiff's counsel to comment upon the absence of their medical expert's testimony since it was plaintiff's objection that caused the testimony to be barred.

■ It is well established that the determination of whether comments from counsel are prejudicial and deny a party a fair trial is within the sound discretion of the trial court. (*Carlasare v. Wilhelmi* (1985), 134 Ill. App. 3d 1, 7.) Hence, its rulings will not be disturbed absent an abuse of discretion. Generally, failure to object to any impropriety in counsel's closing argument results in waiver, unless the comments are so inflammatory and prejudicial that plaintiff is denied a fair trial. (*Carlasare*, 134 Ill. App. 3d at 6.) *It has been held that counsel cannot complain when he interjects an argument into the proceedings which invites rebuttal from opposing counsel. Lembeck v. Brady* (1966), 78 Ill. App. 2d 146, 152.

■ During defense counsel's closing argument, he attacked Dr. Belga's testimony, suggesting that his conclusions were not based on sound medical practices. In response to defense counsel's argument, plaintiff's counsel stated the following during his closing argument:

> "I haven't heard any other doctor come in here and testify. I haven't heard anybody get on that stand and say there is some other cause for it [the hip injury]. I believe that we have to rely on what Dr. Belga said."

The above comments by counsel were not so inflammatory or prejudicial as to constitute reversible error, especially since the comments were in response to opposing counsel's closing argument. Thus, we find that defendants were given a fair trial.

## IV

■ Defendants' fourth contention on appeal is that the trial court

committed reversible error by permitting plaintiff's treating physician to testify concerning X-ray findings when the X rays were not available in court for cross-examination. Defendants argue that under *Hickey v. Chicago Transit Authority* (1964), 52 Ill. App. 2d 132, testimony as to the contents of X rays, without them being available in court, was reversible error because it precluded the opposing counsel from cross-examining the doctor as to the nature and severity of the injury. *Hickey*, 52 Ill. App. 2d at 139.

Additionally, in *Duffek v. Vanderhei* (1980), 81 Ill. App. 3d 1078, plaintiff's doctor testified to what he had observed on certain X rays which were not available in court. Similarly, in *Riley v. Johnson* (1981), 98 Ill. App. 3d 688, plaintiff's doctor was allowed to testify as to his recollection of what X rays revealed, because they had been destroyed. The court in *Duffek* and *Riley* agreed with the ruling in *Hickey* concerning the impropriety of a doctor's testimony relating to X rays which are not available in court for cross-examination. However, each of these cases found that even if the doctor's testimony was improper, such error was not enough to warrant a new trial. Each court reasoned that since the doctor's earlier testimony of his physical examination had revealed the same findings as the X rays, his testimony about the X rays was merely corroborative. *Riley*, 98 Ill. App. 3d at 694; *Duffek v. Vanderhei* (1980), 81 Ill. App. 3d 1078, 1088.

As in *Duffek* and in *Riley*, here, prior to his testimony concerning the X rays, Dr. Belga testified that his own physical examination of plaintiff had evidenced the condition of aseptic or avascular necrosis of the left hip joint. Accordingly, Dr. Belga's testimony as to what the X rays revealed only served to corroborate what his own physical examination had shown. Therefore, defendants were not denied a fair trial.

## V

■ Defendants' fifth contention is that the trial judge improperly coerced the jury to reach a verdict. Defendants rely on *People v. Robertson* (1981), 92 Ill. App. 3d 806, and *People v. Friedman* (1986), 144 Ill. App. 3d 895, to support their argument that the brevity of deliberation after the jury received the deadlock instruction created a strong inference that the judge's remarks coerced the jury's verdict.

Both *Friedman* and *Robertson* are inapposite to the present case. In *Friedman*, the appellate court held that the trial judge's comment concerning the impending sequestration if a verdict was not reached soon, impermissibly hastened the verdict which was announced 5 min-

utes after the judge's sequestration remark. (*Friedman*, 144 Ill. App. 3d at 903-04.) Also, in *Robertson*, the appellate court found that the jury had been coerced by the trial judge's repeated remark to the jury that "You can not be deadlocked." Clearly, these cases involve comments that exceed that which was approved for deadlock juries in *People v. Prim* (1972), 53 Ill. 2d 62, and that which appears in the instant case.

In *Prim*, the Illinois Supreme Court established that when confronted with a possibly deadlocked jury, the Illinois courts should comply with Standards Relating to Trial by Jury promulgated by The Bar Association Project on Minimum Standards for Criminal Justice. These standards state, in pertinent part, as follows:

> "(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.
>
> (c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement." (ABA Standards, Standards Relating to Trial By Jury §5.4 (Tent. draft 1968).)

In determining the coercive nature of an instruction given as directed in *Prim*, the court should consider the time when the instruction was given and the length of time the jury deliberates after such instruction. (See *People v. Allen* (1977), 47 Ill. App. 3d 900.) Yet, it is within the trial judge's discretion to allow further deliberation and to determine the reasonableness of such deliberation even after a jury has indicated that it is "hopelessly deadlocked." Absent an abuse of discretion, this court will not reverse. (*Allen*, 47 Ill. App. 3d at 906.) We find that the trial judge's instructions were directly from *Prim* and did not improperly coerce the jury to reach its verdict.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI and LINN, JJ., concur.