VEDA GREEN, Plaintiff-Appellant, v. PATRICK HERON, Defendant-Appellee.

First District (3rd Division)   No. 1—90—3379

Opinion filed May 18, 1994.

TULLY, P.J., dissenting.

Gordon & Gordon, Ltd., of Chicago (Robert E. Gordon and Catherine Howard, of counsel), for appellant.

James Kirk Perrin, of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Veda Green, brought a medical malpractice suit against defendant, Dr. Patrick H. Heron, alleging that Dr. Heron, a gynecologist, negligently performed a laparoscopic tubal ligation on her at South Chicago Community Hospital (S.C.C. Hospital). S.C.C. Hospital was also named a defendant. Three and one half years after the suit was filed, a summary judgment was entered in favor of S.C.C. Hospital. Dr. Heron, however, was not served with process until six years and seven months after the suit was filed. Dr. Heron filed a motion to dismiss pursuant to Supreme Court Rule 103(b) (134 Ill. 2d R. 103(b)), claiming that plaintiff failed to exercise reasonable diligence in effecting service upon him. The trial court granted Dr. Heron's motion and dismissed the case with prejudice. It is this order from which plaintiff appeals.

Plaintiff argues on appeal that the trial court erred when it found a lack of reasonable diligence and, alternatively, that the trial court erred when it dismissed the case with prejudice. We affirm the trial court's order dismissing the case with prejudice.

On September 2, 1983, plaintiff filed her complaint. The Cook County sheriff's department attempted unsuccessfully to serve Dr. Heron on three separate occasions at 2011 East 75th Street, Chicago, Illinois. This was the address where Dr. Heron had maintained his medical practice. The summons were returned unserved and indicated only that Dr. Heron could not be found.

Dr. Heron was not found at 2011 East 75th Street because he had moved to Kingston, Jamaica, in August of 1983 to begin a teaching position at the University of the West Indies. Dr. Heron has dual citizenship; he is both an American and a Jamaican citizen. In preparation for his move, Dr. Heron told the staff in his office, the doctor replacing him, and the doctor who owned the office space of his impending move. He also informed the administration at S.C.C. Hospital of his appointment to teach. S.C.C. Hospital was where Dr. Heron had staff privileges and where he had performed the surgery alleged in plaintiff's complaint.

Dr. Heron also notified the American College of Obstetricians and Gynecologists of his move, which thereafter listed him at his new Kingston, Jamaica, address. In addition, in preparation for the move, Dr. Heron filled out a change of address form with the United States Post Office, with his Kingston, Jamaica, address. Dr. Heron also listed his phone number in the Kingston telephone directory beginning in 1983. In July of 1987, Dr. Heron also supplied the American Medical Association (AMA) with his address in Jamaica. Dr. Heron also advised the condominium association where he lived that he planned to move to Jamaica. Finally, he notified the registered agent for his professional corporation of his impending departure to Jamaica.

When the summons were returned unserved, plaintiff employed a private investigator, Weldon Veasey. Veasey went to the address on 75th Street to speak with the neighbors to ascertain Dr. Heron's whereabouts. Pursuant to this inquiry, plaintiff discovered that Dr. Heron had left the country, but nothing more. During the next four months plaintiff did nothing further to locate Dr. Heron.

In 1984, plaintiff attempted to locate Dr. Heron during the months of April and September; during the other 10 months plaintiff made no efforts to locate Dr. Heron. During April and September, Veasey twice returned to 75th Street, spoke with staff at S.C.C. Hospital, made inquiry with the Secretary of State, the Illinois Department of Education and Registration and the AMA. These activities proved fruitless.

In 1985, Veasey returned to 75th Street three more times. These trips were made during the months of February, July and December.

Plaintiff also contacted the AMA in May and July. The AMA responded each time that it did not have Dr. Heron's address. Also during July, plaintiff wrote to the Jamaican consulate inquiring as to Dr. Heron's whereabouts. Plaintiff made no investigative efforts during January, March, April, June, August, September or November.

In February 1986, Veasey returned yet again to 75th Street, where he was told that Dr. Heron was living at 8700 South Dante in Chicago. So, on March 5, 1986, an alias summons was issued for that address. This summons was returned unserved.

In April 1986, plaintiff deposed David R. Fosse, vice-president at S.C.C. Hospital. Prior to that time, plaintiff had not sought to depose anyone at S.C.C. Hospital to determine if Dr. Heron had left a forwarding address for his patients or for medical referral purposes. At his deposition, Fosse informed plaintiff that Dr. Heron was in Jamaica. The next month, in May, Veasey went again to South Dante. In October 1986, plaintiff deposed Harlan H. Newkirk, president of S.C.C. Hospital. Plaintiff, however, did not inquire as to Dr. Heron's whereabouts.

In February 1987, plaintiff employed the investigating services of United Exchange. Plaintiff made no other independent efforts until May 1988, when United Exchange confirmed that Dr. Heron was living in Jamaica.

Nearly five years after Dr. Heron moved, plaintiff finally focused her search in Jamaica. Plaintiff contacted the Jamaican Consulate in June 1988. In July, plaintiff learned that Dr. Heron was not practicing medicine. Then in December 1988, plaintiff personally traveled to Jamaica, where she learned Dr. Heron's address. On December 28, 1988, plaintiff prepared an alias summons for Dr. Heron at the Kingsway Pharmacy, Kingston, Jamaica, and sent it to the Supreme Court of Jamaica. Plaintiff mailed the summons on January 30, 1989, at the request of the Jamaican Supreme Court. Then on March 5, 1989, the Jamaican Supreme Court told plaintiff to contact them in 60 days for a response. On April 15, however, the Jamaican Supreme Court directed plaintiff to hire a Jamaican law firm to effect service.

During the next four months plaintiff negotiated with different Jamaican law firms. On August 5, 1989, the circuit court of Cook County entered an order appointing a special process server. The alias summons, however, was not issued until December 21, 1989. According to plaintiff's attorney, this $4^1/2$-month delay occurred because plaintiff's attorney lost contact with the plaintiff and could not secure her approval for the $150 service fee. Another alias

summons was issued on April 4, 1990. Finally, on April 23, 1990, six years and seven months after the complaint had been filed, Dr. Heron was served with process.

▓ Supreme Court Rule 103(b) provides for dismissal of an action if a plaintiff fails to exercise reasonable diligence in obtaining service on a defendant. It further provides that the dismissal shall be with prejudice if the lack of diligence occurs after the pertinent statute of limitations has lapsed. (134 Ill. 2d R. 103(b).) In evaluating whether a plaintiff exercised reasonable diligence, the relevant factors are: (1) the length of time which elapsed before process was served; (2) the plaintiff's activities; (3) the plaintiff's knowledge of the defendant's location; (4) the ease of discovering defendant's location; (5) the defendant's actual knowledge of the suit; and (6) any special circumstances that would affect plaintiff's effort. (*Jarmon v. Jinks* (1987), 165 Ill. App. 3d 855, 520 N.E.2d 783.) Furthermore, a dismissal under Supreme Court Rule 103(b) is left to the sound discretion of the trial court, which will not be disturbed absent an abuse of that discretion.

Here, the first factor, length of time before process was served, weighs heavily against plaintiff. It took plaintiff six years and seven months to effect service. Plaintiff relies on several cases in an attempt to demonstrate that she exercised reasonable diligence. In none of those cases, however, does the elapsed time approach six years and seven months. (See *Jarmon v. Jinks* (1987), 165 Ill. App. 3d 855, 520 N.E.2d 783 (three years and five months); *Hebting v. Miller Brewing Co.* (1980), 82 Ill. App. 3d 981, 403 N.E.2d 671 (one year and seven months); *Aranda v. Hobart Manufacturing Corp.* (1977), 66 Ill. 2d 616, 363 N.E.2d 796 (1 year and 10 months); *Licka v. William A. Sales, Ltd.* (1979), 70 Ill. App. 3d 929, 388 N.E.2d 1261 (one year and one month); *Mason v. Smith* (1972), 9 Ill. App. 3d 300, 292 N.E.2d 241 (one year and two months); *Davis v. Anthony* (1966), 67 Ill. App. 2d 226, 214 N.E.2d 603 (two years and six months); *Felton v. Coyle* (1965), 66 Ill. App. 2d 4, 214 N.E.2d 359 (two years and one month).) The passage of six years and seven months between the time a complaint is filed and the time a defendant is served, by any fair measure, strongly demonstrates a lack of reasonable diligence in obtaining that service.

In order to address the second factor, plaintiff's activities, it is helpful in this instance to first examine the third factor, plaintiff's knowledge of Dr. Heron's whereabouts.

On November 5, 1983, plaintiff's investigator, Weldon Veasey, went to 75th Street to speak with neighbors and learned for the first time that Dr. Heron, a native Jamaican, had left the United States. According to plaintiff, sometime between then and May 21, 1985,

plaintiff learned that Dr. Heron was in Jamaica. On May 21, 1985, plaintiff's attorney wrote to the AMA asking for Dr. Heron's current address. That letter reads in part:

"Our offices are attempting to locate the whereabouts of the above captioned physician [Dr. Heron] who, we have been advised, has moved to Jamaica. Will you please forward us his current address in Jamaica so we could contact him accordingly."

On July 9, 1985 plaintiff again sent a letter to the AMA requesting Dr. Heron's address. This second letter read in part: "This man is a Jamaican with a known address in Jamaica which should be in your records." Also on July 9, 1985, plaintiff wrote to the Jamaican consulate "attempting to locate a Jamaican citizen." These letters demonstrate that plaintiff had actual knowledge as early as May 21, 1985, that Dr. Heron was in Jamaica, but apparently chose not to act on this knowledge for three years, until June 1988. Still, it took plaintiff almost another two years to serve Dr. Heron on April 23, 1990. Thus, from the time plaintiff had actual knowledge that Dr. Heron was in Jamaica, it took almost five years to serve him.

With plaintiff's knowledge of defendant's whereabouts in mind, we now review plaintiff's activities. On November 5, 1983, plaintiff's investigator went to Dr. Heron's former office on 75th Street to speak to the neighbors there and was told that Dr. Heron had left the country. Five months later, on April 2, 1984, Veasey returned to 75th Street and was again told that Dr. Heron had left the country. Plaintiff, however, continued to limit her search to Chicago. Veasey returned to 75th Street on four more occasions; February 14, 1985, July 2, 1985, December 1, 1985, and February 10, 1986. By July 2, 1985, however, it is clear that plaintiff had information that Dr. Heron was in Jamaica.

In addition, after plaintiff's attorney was told in a deposition on April 17, 1986, that Dr. Heron was in Jamaica, for some inexplicable reason he did not ask the deponent where Dr. Heron was in Jamaica. Moreover, after being told that Dr. Heron was in Jamaica, plaintiff's attorney inexplicably continued to restrict his search for Dr. Heron solely within the Chicago city limits. Finally, in 1988 plaintiff began to look outside Chicago and inside Jamaica for Dr. Heron. Plaintiff, however, took another two years to serve Dr. Heron.

Plaintiff's attorney contends that it took this long because Jamaica does not have laws concerning service and that the Jamaican Supreme Court was at fault. This contention is inaccurate and disingenuous. The Jamaica Judicature (Civil Procedure Code) Law (1953 - 1992), ch. 177, title 8, par. 35, provides:

"Title 8. Service of Writ of Summons.

(i) Mode of Service.

35. When service is required the writ shall wherever it is practicable be served by delivering to [Dr. Heron] a copy of such writ under seal of the Court; but if it be made to appear to the Court or a Judge that the plaintiff is from any cause unable promptly to effect service in manner, aforesaid, the Court or Judge may make such order for substitution or other service, or for the substitution for service of notice by advertisement or otherwise as may be just."[1]

Plainly, the Civil Procedure Code for Jamaica shows that plaintiff's attorney's contention is inaccurate. Moreover, despite plaintiff's attorney's claimed international complexities in serving Dr. Heron, including plaintiff's attorney's reference to the Hague Convention, we note that plaintiff eventually served Dr. Heron by a relatively mundane method; a special process server appointed by the circuit court of Cook County served Dr. Heron with process.

It is an equally incredible argument that relying on the Supreme Court of Jamaica to act as plaintiff's process server shows reasonable diligence on plaintiff's behalf. According to the affidavit of plaintiff's attorney, a third alias summons was issued on December 28, 1988, and sent to the Supreme Court of Jamaica with a request for information about fees for service. The summons was then mailed on January 30, 1989, at the request of the Jamaican Supreme Court. On March 5, 1989, plaintiff's attorney was told to contact them again in 60 days for a response. Then on April 15, 1989, the Jamaican Supreme Court directed plaintiff to hire a Jamaican law firm to effect service.

Finally, on August 5, 1989, a special process server was appointed by the circuit court of Cook County. Another $4^1/2$-month delay resulted when plaintiff's attorney lost contact with plaintiff and was unable to secure her approval for the $150 service fee.

Plaintiff's attorney claims that he diligently sought to discover the whereabouts of Dr. Heron, but was frustrated in part by S.C.C. Hospital. In support of this argument, plaintiff's attorney points to the depositions of two S.C.C. Hospital officials, Harlan Newkirk on October 27, 1986, and David Fosse on April 17, 1986. In his brief, plaintiff's attorney asserts that Newkirk stated that he did not know Dr. Heron's whereabouts and that the deposition of David Fosse, the vice-president of the hospital, yielded similar results.

A review of these depositions, however, reveals that plaintiff's

---

[1]The Jamaican law for service of writ of summons was obtained from the Cook County Law Library, Daley Center, Chicago and the Embassy of the United States of America in Kingston, Jamaica.

attorney's contention like his previous contention is disingenuous. Simply put, plaintiff never inquired at Newkirk's deposition about Dr. Heron's address. Moreover, Newkirk never volunteered an unelicited statement to this effect. At oral argument, plaintiff's attorney was given the opportunity to clarify the inconsistency which resulted from his characterization of Newkirk's deposition testimony and what was reflected in the deposition transcript. Plaintiff's attorney claimed that while the question as to Dr. Heron's address was never asked on the record at Newkirk's deposition, he did inquire after the deposition had concluded. It was at this time, according to plaintiff's attorney, that he was told by Newkirk that he did not know where Dr. Heron was living.

Furthermore, the transcript of Fosse's deposition clearly belies the assertion that Fosse's deposition yielded similar results to Newkirk's deposition. On April 17, 1986, at the deposition of David Fosse the following colloquy occurred, between Fosse and plaintiff's attorney:

"Q. Do you have any personal knowledge of where, if anywhere, Dr. Heron might have staff affiliation privileges currently?

A. Also is my impression from the history that he went to Jamaica. I have no idea whether he has staff privileges in Jamaica.

Q. Off the record.

(Discussion off the record.)

Q. Let's go back on the record.

Q. A physician who is granted staff privileges at the hospital, is that individual paid or compensated in any way by the hospital?"

At oral argument, plaintiff's attorney was asked why he did not ask Fosse for Dr. Heron's address in Jamaica. Plaintiff's attorney stated that he personally asked Fosse that question after the deposition. The transcript of the deposition, however, does not list plaintiff's attorney at oral argument as being present at the deposition. We do not give credence to plaintiff's attorney's answer to the court's question. Plaintiff's activities, in sum, define a lack of reasonable diligence at its apogee.

The fourth factor, the ease of discovering Dr. Heron's location, also demonstrates a lack of reasonable diligence. Plaintiff could have inquired at Dr. Heron's professional association, the American College of Obstetricians and Gynecologists, which since 1983 listed Dr. Heron at his new Jamaican address. Upon telephone inquiry, the American College of Obstetricians and Gynecologists will provide information regarding a member's whereabouts. In addition, checking at the United States Post Office, plaintiff would have discovered a change of address form with Dr. Heron's new address. After gaining

information in 1985, in 1986 and again in 1988 that Dr. Heron was in Jamaica, plaintiff could have looked in the Kingston telephone directory where Dr. Heron has been listed since 1983.

Although plaintiff did inquire with the American Medical Association concerning Dr. Heron's whereabouts in 1984 and 1985, she could also have checked back with the AMA, which had Dr. Heron's address starting in 1987. The AMA provides information on its member's whereabouts for a fee of $40. Finally, plaintiff could have made inquiry with the registered agent for Dr. Heron's professional corporation whom Dr. Heron had informed of his departure. Plaintiff chose none of these routes, preferring instead to make futile trips to 75th Street and South Dante.

The fifth factor, Dr. Heron's actual knowledge of the suit, also shows that there is no merit to plaintiff's contention. It appears that Dr. Heron only became aware of the suit when he was served, and there is no assertion to the contrary.

We, therefore, conclude that the trial court properly dismissed plaintiff's complaint for failing to exercise reasonable diligence in obtaining service on Dr. Heron.

We next address plaintiff's argument that the trial court erred when it dismissed the case with prejudice. Plaintiff relies on section 13—208 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 13—208) to assert that the statute of limitations is tolled for the period of time that a defendant resides out of State after the cause of action accrues. Accordingly, plaintiff argues that the statute of limitations was tolled when Dr. Heron took up residency in Jamaica in the fall of 1983, and that any dismissal should have been without prejudice.

■ An entire reading of section 13—208 of the Illinois Code of Civil Procedure, however, evinces that a person is not considered to be living outside of the State during any period that he or she is subject to the jurisdiction of the courts of Illinois. Since Dr. Heron was clearly subject to the court's jurisdiction pursuant to the alleged malpractice committed in Illinois, he is not to be considered as having lived outside the State with respect to the statute of limitations. The statute of limitations having therefore lapsed on plaintiff's cause of action, the trial court properly dismissed the case with prejudice.

Accordingly, the judgment of the trial court dismissing plaintiff's cause of action with prejudice is affirmed.

Affirmed.

CERDA, J., concurs.

PRESIDING JUSTICE TULLY, dissenting:

I respectfully dissent. I would reverse the trial court's order dismissing the case with prejudice and I would remand for further proceedings.