Allen Hickey, Plaintiff-Appellee, v. Chicago Transit Authority, a Municipal Corporation, Defendant-Appellant.

**Gen. No. 49,426.**

First District, Third Division.

September 4, 1964.

133

William J. Lynch, William S. Allen, John W. Freels, and Edmund J. Burke, of Chicago, for appellant.

Leonard Levin, of Chicago (Irving S. Abrams, of counsel), for appellee.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from a judgment for $15,000 entered on a verdict in a personal injury action involving plaintiff's fall in a Chicago Transit Authority (CTA) bus. The principal issues on appeal are whether the verdict is against the manifest weight of the evidence, whether prejudicial comments were made by plaintiff's attorney in his closing argument and by the trial judge during the course of the trial; whether evidence of plaintiff's reputation for sobriety and truthfulness was properly admitted, and the propriety of certain medical testimony.

The accident occurred in the early morning hours of June 6, 1956 and there were only two eyewitnesses —the plaintiff and the driver of the bus. There is a sharp conflict between the two as to where plaintiff got on the bus, his purpose in getting on, where he sat, his movements just before the accident, and where in the bus the accident occurred, as well as to the ultimate issue in the case, that is, whether the fall

was caused by what plaintiff calls a "terrible" jolt of the bus or by his own intoxication.

Plaintiff testified that he was hungry, could not sleep, and went out looking for a restaurant. He boarded a Damen Avenue bus at Damen Avenue and Addison Street at about 2:00 a. m., but before it got to Clark Street and Bryn Mawr Avenue there was a terrific jolt and he fell forward, hitting the seat in front of him, and blacked out and the next thing he knew, he was being picked up and taken to the emergency room at the Edgewater Hospital by two city policemen. He testified further that he had not been drinking and that the bus had been going too fast.

The driver testified he had been a bus driver for the CTA for twenty years; that his run at the time in question started at Damen and Blue Island Avenues; that at Damen Avenue and Cermak Road, plaintiff got on just as the doors of the bus were being closed; that he was intoxicated; that he presented an emergency transfer, which meant he had passed his stop on another bus and the driver had given him the transfer; that on the bus in question he moved from seat to seat; that the driver told him to sit down; that when a passenger was getting off at Ravenswood and Bryn Mawr Avenues and the driver was holding the door open, the plaintiff, who was standing at a grab handle bar near the front long seat, slid down the bar onto the floor. The driver tried to pick him up, and plaintiff said his back hurt. The driver then proceeded to the Edgewater Hospital, 3½ blocks away.

There was no one else on the bus at the time plaintiff fell. At the hospital the driver left the bus, called his dispatcher, and returned. After he returned to the bus, defendant's police arrived and a minute later the city police arrived. Two CTA policemen helped plaintiff off the bus and two city policemen helped him into the hospital. They all testified that plaintiff was

drunk. After he was examined by a doctor, he was taken to a police station for safekeeping and charged with misconduct.

█ Thus, four witnesses support the driver's statement with respect to plaintiff's intoxication and other details, such as the fact that he was found sitting on the floor of the bus and holding onto the front grab iron. Plaintiff alone denies he was intoxicated. Defendant contends that this establishes that the verdict was against the manifest weight of the evidence. It was a basic issue in the case and in that respect the verdict was against the manifest weight of the evidence.

██ Defendant contends that since all possible witnesses have been heard as to the facts relating to the accident, there would be no purpose in remanding the cause, but that an order of reversal without remandment should be entered. This would be equivalent to directing the jury to find a verdict for defendant and entering judgment thereon. On such a motion the court cannot consider any conflict in the evidence nor its weight or preponderance nor the credibility of witnesses, but must take that evidence as true which is most favorable to plaintiff's cause of action. Greenlee v. John G. Shedd Aquarium, 31 Ill App2d 402, 176 NE2d 684, and cases there cited. This is not a case in which we can avoid remandment. Substantial errors were committed, and we will consider those we believe important and which may serve to guide the conduct of another trial.

█ Errors were alleged with respect to the conduct of the trial and the rulings and comments of the trial court. The trial court started at 10:08 a. m., when the court directed plaintiff's attorney to make his opening statement. Defendant's attorney appeared at 10:10 a. m., at which time he asked for a mistrial because he had not heard the beginning of the opening statement.

He had previously advised the court of the necessity of his appearing in the federal court that morning, and the court had given him a five minute delay. His motion for mistrial was denied. While the time allowed him was short, we take note of the fact that there is a tremendous backlog in the trial court and that judges as well as counsel are under great pressure. We also take note of the fact that defendant has a great amount of this type of litigation and employs many lawyers. There must be cooperation between these lawyers which will enable them to take care of such situations. It was not error to deny defendant's motion to declare a mistrial. Gray v. Gray, 6 Ill App2d 571, 128 NE2d 602; Ryan v. Monson, 47 Ill App2d 220, 197 NE2d 265.

 Counsel for defendant charges that the court frequently made adverse comments in the presence of the jury when ruling on objections to the evidence, and that the court also erred in not hearing arguments on such matters in chambers when counsel so requested. The court did on occasion grant counsel's request and on other occasions denied it. Hearing matters in chambers while the jury sits in the jury box is procedure that should be used only on rare occasions. The record can be preserved without constant repetition of the same objections. As counsel for defendant suggests, however, the court should be conscious of the fact that he is the dominant figure in the courtroom in any jury proceeding and that his inadvertent comment on the evidence or attitude of belief or disbelief can well prejudice the jury.

Error is charged in the admission of what is claimed to be hearsay testimony given by Dr. Irvin Belgrade, the attending physician, as to the course of treatment followed by himself and two consulting physicians, Drs. Fox and Sugar, who did not testify. After testifying he had no independent recollection

137

of Dr. Sugar's report, Dr. Belgrade testified that Dr. Sugar examined plaintiff and concurred in the diagnosis of Drs. Belgrade and Fox that he had a herniated disc. Dr. Belgrade also testified that Dr. Sugar recommended performing a myelogram, that is, an X-ray of the spinal cord after injection of a radio opaque substance into the spinal arachnoid space. He was permitted to testify to the pathology revealed by the myelogram after refreshing his recollection from X-ray reports as they appeared in stipulated hospital records. The X-rays themselves were never introduced in evidence.

Since the time briefs were filed in the instant case, the Appellate Court for the Third District has decided the case of Smith v. Broscheid, 46 Ill App2d 117, 196 NE2d 380. There, the plaintiff's physician produced three X-rays taken at his direction and described the pathology shown. On cross-examination it developed that the original interpretation of the X-rays had been made not by the witness, but in his presence by a specialist in radiology at the hospital in which the plaintiff was confined. The witness testified that after the radiologist pointed out the narrowing of the cervical vertebrae, he himself could see the difference in the disc space. The court found no error in the admission of that testimony. In so holding, it adopted the view taken by Professor Wigmore, "that the diagnosis of a physician based upon information received from another physician having personal observation and . . . interest in learning and describing accurately should be admitted. 3 Wigmore, Evidence p 8, par 688." The court also referred to several cases decided by reviewing courts of other states to the effect that a doctor's conclusions must of necessity in many instances be based on information acquired from sources outside himself (citing Alexander v. Covel Mfg. Co., 336 Mich 140, 57 NW2d 324), and

138

that this was an exception to the hearsay rule because the necessities of medical science require that it be presumed that professional reports of other doctors are made to aid in a correct diagnosis of a particular ailment, citing State Realty Co. v. Ligon, 218 Ala 541, 119 So 672, and Sundquist v. Madison Ry., 197 Wis 83, 221 NW 392.

■ Our conclusion is that it is proper for an attending physician to testify with respect to the pathology revealed by a myelogram or X-ray, even though he did not perform the myelogram or take the X-ray, and had sought the advise of a specialist in its interpretation, but the myelogram or X-ray must be produced and put in evidence so as to furnish the basis for cross-examination.

■ Error is also charged in the admission of certain evidence in rebuttal to the defense based on intoxication. A former neighbor of the plaintiff testified he had never seen plaintiff intoxicated and that plaintiff had a reputation for sobriety. This was error, since plaintiff's reputation was not an issue. Kozlowski v. City of Chicago, 113 Ill App 513. The issue was whether he was intoxicated at the time of the accident.

■ ■ The neighbor also testified as to plaintiff's reputation for truth and veracity. In the ordinary civil case parties may not support their position by testimony as to their good character or reputation, and it is only when character or reputation is the issue, such as in slander and false imprisonment cases, that character evidence is admissible. Graves v. Johnson, 176 So 256 (Miss, 1937). In the instant case plaintiff's character was not an issue.

■ ■ Defendant charges error in the concluding argument of plaintiff's counsel. Several remarks were made during the course of the trial which implied that plaintiff was impecunious, and his counsel in final argument compounded the prejudice. Reference to

139

the financial status of the parties in concluding argument is improper. Jacobson v. National Dairy Products Corp., 32 Ill App2d 37, 176 NE2d 551.

■ Counsel for plaintiff also said in his closing argument that CTA employees "had been working the plaintiff over." In common parlance this means putting pressure on a person by improper means, physical or otherwise. There was nothing in the record to support this charge. The court erred in overruling defendant's objection to these remarks by plaintiff's counsel.

The judgment is reversed and the cause is remanded with directions to grant the motion for a new trial, and for such other and further relief as is not inconsistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

DEMPSEY and SULLIVAN, JJ., concur.