Susan Gabosch, Plaintiff-Appellee, *v.* Howard Tullman *et al.*,
Defendants-Appellants.

(No. 58409;

First District (3rd Division)—August 1, 1974.

McKenna, Storer, Rose, White & Haskell, of Chicago (John C. Bartler and Robert S. Soderstrom, of counsel), for appellants.

Fred Lambruschi and Herbert P. Veldenz, both of Chicago, for appellee.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Susan Gabosch was struck by an auto driven by Howard Tullman. She brought this personal injury action against Tullman and against Morton Weiss, the lessee, and Eastern Auto Leasing, the lessor and owner of the auto. Weiss and Eastern were dismissed from the case and the jury returned a verdict against Tullman, who appeals.

He contends that the trial court erred in denying his motions for directed verdicts and his motion for judgment notwithstanding the verdict. He also contends that a new trial should be granted because: the jury was improperly instructed on the statutory right-of-way of pedestrians at a crosswalk; the attorney for the plaintiff improperly questioned two defense witnesses, and the court made an incorrect comment about the evidence.

Miss Gabosch testified that about 11 P.M. on an evening in August 1967, after finishing her work at the Evanston Hospital, she walked toward Central Street, Evanston, with the intention of taking an elevated train home. The elevated station was located a block or two away on the south side of Central, an east and west street. Upon leaving the hospital grounds, she walked south on Girard Avenue, a street which ends at Central. When she got to the corner of Girard and Central, she crossed

from the east to the west side of Girard and prepared to cross Central diagonally because the entrance to the station was west of the intersection. Before starting across, she looked in both directions for approaching cars. She saw the defendant's car to the east about 200 feet or a quarter of a block away. She proceeded across Central without looking in the defendant's direction again. Several hospital employees who had taken the same path were about 10 to 15 feet in front of her. When she was about 3 feet from the center of the street, she was struck by the defendant's car, which she said she did not see or hear from the time she started to cross Central until she was struck. She was helped to the side of the street and was then driven to the Evanston Hospital by two policemen. She did not remember talking to any policemen after the accident.

On direct examination Miss Gabosch testified that when she was struck by the automobile she believed that she was still in the crosswalk. She was referring to a crosswalk across Central from the northwest corner of Girard. However, there is no marked crosswalk from the northwest corner. There is a marked crosswalk from the northeast corner of Girard, and there is one about 70 feet west of the northwest corner which extends to the entrance of the elevated station. On cross-examination the plaintiff said that she was hit when she was on the east edge of the latter crosswalk. The defense counsel then asked whether the angle at which she was crossing Central would bring her into the crosswalk leading to the station entrance. She replied that it would not and that she did not enter that crosswalk.

Tullman testified that he was driving at about 30 miles per hour and that he was familiar with Central Street because he had driven on it often. He said that he saw the plaintiff step out into the street when she was between 50 to 100 feet ahead of him. He testified that he applied his brakes but could not stop before the left side of his car struck her.

Officer Mathew Rzepecki, who was called by the defense, testified that in investigating the accident, he talked to Tullman and to James Drish at the scene; that he measured the skid marks left by Tullman's car and talked to the plaintiff at the Evanston Hospital right after the accident. He stated that he believed that the plaintiff told him at that time that she was not in a crosswalk at the time of the accident. When cross-examined by plaintiff's counsel, he testified that he did not note the length of the skid marks in his accident report because the marks did not evidence speed.

He also stated during cross-examination that he wrote in his report that the accident occurred 50 feet west of Girard Avenue. He was asked whether he measured the distance from the west side of Girard to the east edge of the station crosswalk. The officer replied that he did not

recall measuring that distance. Plaintiff's counsel then asked, "If I were to tell you that was measured from the west curb of Girard Avenue to the east edge of that crosswalk, and the measurement was 49.6 inches, would that be correct?" The defendant objected to the question, but the witness was allowed to answer that he would not know if that was correct without measuring it himself. Plaintiff's counsel then asked, "Well, if I were to tell you there was a measurement made with a 50-foot measure from the west curb of Girard to the east edge of that crosswalk, it measures exactly 49 feet 6 inches——" The defense objected that there was no specification of who had measured the distance or when it was measured. Plaintiff's counsel then said, "You are looking at him right now, and I will prove it. I will take the stand, your Honor."

The trial judge sustained the defense objection and the plaintiff's counsel rephrased the question: "Your police report shows and your investigation, that the impact · took place 50 feet west of Girard. Now, if a measurement is made and the measurement shows that if the distance between the west curb of Girard and the east edge of the crosswalk under the 'L' is 49 feet 6 inches, then the impact between Mr. Tullman's automobile and Miss Gabosch was in the crosswalk underneath the 'L', is that right?" The defense objected that the question was argumentative and assumed facts but the question and answer were allowed. Although the plaintiff's counsel referred three times to a measurement of 49 feet 6 inches between Girard Avenue and the station crosswalk, the measurement was never introduced into evidence.

On redirect examination, the defendant's counsel asked Officer Rzepecki why he did not record the length of the skid marks. Plaintiff's counsel objected that the question had been asked and answered on cross-examination. At that point the court said, "Personally I think I have a great deal of illumination from the cross-examination on that particular point," but it allowed the question. Defense counsel then asked, "Did the length of the skid marks indicate the speed of the car?" and the witness answered that there were not enough skid marks to prove speed. Plaintiff's counsel objected to the question and answer, and in the ensuing discussion the court said, "I don't want to argue with you, but I think in view of the fact that the witness has testified there were not enough skid marks for him to base anything on, that question based upon the skid marks——" Defense counsel objected to the court's comment on the ground that the witness' testimony was misinterpreted. There was a conference outside the hearing of the jury after which the defendant's counsel discontinued that line of questioning.

James Drish testified that he was standing in front of a restaurant east of the intersection of Girard Avenue and Central Street when the acci-

dent occurred. He said that he had been watching a group of hospital employees crossing Central Street when he saw the plaintiff. He stated that she walked about 20 feet west on Central Street and then "walked right into the street before she got to the crosswalk, and the guy who was driving the car—I heard the brakes jam, and it was too late. He hit her." He said that the accident occurred when the plaintiff was about 15 feet east of the crosswalk to the "L" station entrance and that she walked into the street without looking either way.

During cross-examination, Drish was asked, "Incidentally, at the time of this occurrence you were unemployed, is that right?" The witness answered, "That's right." The question was objected to as irrelevant, but when plaintiff's counsel promised to connect it up to relevant inquiry, it was allowed. The witness was again asked whether he was unemployed at the time of the accident and after replying affirmatively, he was asked whether he was presently unemployed. An objection to the question was sustained. The court instructed the jury to disregard the question and answer about the witness being unemployed at the present time. Drish was asked at a later time in the cross-examination if he was paid to fly to Chicago from California where he was then residing. He answered that his air fare and his transportation to and from the airport were paid for. He was asked whether he was paid for loss of wages to which the witness replied that he was not because he was unemployed.

The defense moved for directed verdicts following the close of the plaintiff's case and after the close of all the evidence; the motions were denied as was the motion for judgment notwithstanding the verdict. The defendant contends that the motions should have been granted because there was no evidence of the plaintiff's due care.

■■ Whether the plaintiff was guilty of contributory negligence is a close question. The jury thought she was not and said so in its answer to a special interrogatory. Although the jury's finding is not controlling it is entitled to great weight and it is the decisive factor in our determination of the issue. The cold record points to the lack of due care on the part of the plaintiff, but the jury had the duty of judging the credibility of the witnesses and this must be considered in the total evaluation of their testimony. Because of this consideration, we cannot say that the evidence when viewed most favorably toward the plaintiff, so overwhelmingly established her negligence that no verdict in her favor could ever stand. *Moore v. Checker Taxi Co.* (1971), 133 Ill.App.2d 588, 273 N.E.2d 514.

■■ However, the closeness of the evidence on the question of due care in combination with errors committed during the trial, compel a reversal of the judgment and a remandment for a new trial. When the issue of

liability is so close that the jury might reasonably have returned a different verdict, the trial must be free of errors which might have influenced the verdict.

■■ The questioning of Officer Rzepecki by plaintiff's counsel regarding the measurement between the west side of Girard Avenue and the east edge of the crosswalk under the elevated tracks was improper. Without entering that measurement into evidence, the attorney effectively conveyed to the jury that a measurement had been made that would have placed the plaintiff in the crosswalk when the accident occurred. A statement by counsel regarding facts not in evidence is improper and may be prejudicial. *Jacobson v. National Dairy Products Corp.*, (1961), 32 Ill.App.2d 37, 176 N.E.2d 551.

■■ The court in commenting on Rzepecki's testimony misconstrued what the witness had said. Rzepecki stated that he did not measure the skid marks because they did not evidence speed. The court remarked that there were not enough skid marks to base anything on. The remark had the effect of nullifying the favorable inference to the defendant which could have been drawn from the officer's testimony. A court should be conscious of the fact that it is the dominant figure in the courtroom in any jury proceeding and that an inadvertent comment on the evidence, or its attitude of belief or disbelief can influence the jury. *Hickey v. Chicago Transit Authority* (1964), 52 Ill.App.2d 132, 201 N.E.2d 742.

■■ It was not error for plaintiff's counsel to ask the witness James Drish about his occupation. It is proper to show a witness' occupation as reflecting on his credibility. (*People v. Suriwka* (1971), 2 Ill.App.3d 384, 276 N.E.2d 490.) Furthermore, it is proper to show that the expense of a witness in attending court is being borne by an interested party. (*Paden v. Rockford Palace Furniture Co.*, 220 Ill.App. 534, *cert. denied* (1921), 257 U.S. 645.) However, it was unnecessary for the witness' unemployment to be elicited three times. The repetition unduly emphasized the fact that he was not working either at the time of the accident or at the time of the trial and to that extent was prejudicial.

■■ Inasmuch as the case must be remanded, we will comment on the defendant's contention that error was committed when the jury was instructed that a pedestrian in a crosswalk has the right-of-way. The plaintiff herself admitted that her direction in crossing Central would not have brought her within the station crosswalk. It is argued that while there was no marked walk across Central from the northwest corner of Girard a crosswalk may be presumed at this location, and that the plaintiff testified that she believed she was in this crosswalk when she was struck. The applicable statute (Ill. Rev. Stat. 1965, ch. 95½, par. 111) states that a crosswalk is "[t]hat portion of a roadway ordinarily included

within the prolongation or connection of the lateral lines of sidewalks at intersections." While there is no sidewalk on the west side of Girard there is a pedestrian pathway there, and it has been held that unimproved walks come within the purview of the statute. *Glendinning v. Formiller* (1973), 14 Ill.App.3d 291, 302 N.E.2d 408; *Stine v. Union Electric Co.* (1940), 305 Ill.App. 37, 26 N.E.2d 433. There was no error in instructing the jury on the plaintiff's theory of recovery.

The judgment is reversed and the cause is remanded for a new trial.

Reversed and remanded for a new trial.

McNAMARA, P. J., and MEJDA, J., concur.