ETHEL N. MATTICE, Plaintiff-Appellant, v. BRUCE GOODMAN *et al.*, Defendants-Appellees.

First District (1st Division)   No. 87—2972

Opinion filed July 18, 1988.

John J. Foley, of John T. Burke & Associates, P.C., of Chicago (Edwin R. McCullough, of counsel), for appellant.

Purcell & Wardrope, Chartered, of Chicago (Robert A. Chaney and Sandra Young, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

This appeal by plaintiff Ethel N. Mattice arises from a negligence action brought by her for injuries suffered when she was knocked down in a revolving door while leaving a building owned by defendants Bruce Goodman, Joan Rosenberg, and Nancy Feldman (defendants). At trial, the jury returned a verdict for defendants upon which the court entered judgment. For the reasons set forth below, we affirm.

Defendants own and operate the Carlson Building in Evanston, Illinois. The doorway of the Carlson Building has one revolving door flanked by two ordinary doors. The ordinary doors have signs that read "please use revolving door." The only other exit is through a drugstore adjacent to the lobby. In 1982, defendants employed an elevator starter named John Roach, whose job description included assisting the elderly and disabled as they went through the doors.

On April 20, 1982, Ethel Mattice, age 77, was leaving the Carlson Building through the revolving door. As Mattice stepped out of the revolving door, an unidentified person ran into the door. The door spun and hit Mattice in the back, knocking her to the ground. At that time, Roach was standing in the lobby drinking a soda pop and looking away from the door.

Mattice suffered a severe fracture of a thigh bone and a broken finger. Paramedics treated her at the scene and took her to a hospital, where she remained for three months, including six weeks in traction. Mattice spent another two months in a nursing home. Her left leg is now two inches shorter than her right leg. At the time of the injury, Mattice was recovering from hip surgery, and although she carried a cane, she used it only to negotiate stairways. Mattice suffered subse-

quent falls in her apartment building lobby in 1985 and in her bathroom in 1986.

Mattice brought a negligence action for the injury at the Carlson Building, alleging that the defendants had breached a duty of care that they voluntarily had assumed by placing an employee in the lobby to assist the elderly, disabled and handicapped. Mattice further argued that the floor under the revolving door was worn, making the door unsafe, and that the revolving door violated several provisions of the Evanston Building Code (Evanston Municipal Code ch. 2, §4—2—1(A) (1979), BOCA Basic Building Code (8th ed. 1981) (the Building Code)). Mattice also argued that the injury, which made her left leg shorter than her right, was a cause of her subsequent falls.

The trial court ruled that the safety of the door, and any Building Code violations, required expert testimony. Because Mattice offered no experts, the evidence concerning the worn floor was not admitted, and the trial court refused jury instructions offered by Mattice that restated Building Code sections applicable to revolving doors. Mattice did offer expert testimony that the falls in 1985 and 1986 were caused by the injury in the revolving door, which the trial court refused to allow. As stated, the jury returned a verdict in favor of the defendants, and judgment was entered accordingly, which Mattice appeals.

■ The primary issue is whether the defendants voluntarily assumed a duty to assist persons such as Mattice because the elevator starters, in accordance with their job description, customarily assisted the elderly or disabled by standing near the revolving door as they used it or by holding open the ordinary doors. Two cases, however, *Mick v. Kroger Co.* (1967), 37 Ill. 2d 148, 224 N.E.2d 863, and *Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 365 N.E.2d 80, *appeal denied* (1977), 66 Ill. 2d 629, establish that as a matter of law the defendants assumed no affirmative duty to assist Mattice.

*Mick v. Kroger Co.* (1967), 37 Ill. 2d 148, 224 N.E.2d 863, held that although the defendant grocery store ordinarily helped customers carry their bags of groceries from its store, defendants had no duty to help customers where assistance was not undertaken to protect customers from an unreasonable risk of harm. In *Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 365 N.E.2d 80, *appeal denied* (1977), 66 Ill. 2d 629, the plaintiff sued her landlord for injuries from a fall on an icy sidewalk, arguing that the landlord's 15-year custom of clearing the sidewalk of ice and snow whenever necessary created a duty to clear the sidewalk. The plaintiff relied on *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769, where the defendant had voluntarily conducted safety inspections of its insured and was found

liable for injuries suffered in the insured's factory.

Chisolm distinguished Nelson, however, correctly stating that the defendant in Nelson had been found liable for negligent performance of the safety inspections. The defendant in Nelson was therefore liable for what Chisolm termed "misfeasance": failing to exercise due care in a voluntary undertaking. In Chisolm, the defendant's failure to clear the sidewalks, although he customarily did so, was termed "nonfeasance": not acting in the absence of a duty to act. Thus the terms "misfeasance" and "nonfeasance" distinguish between not exercising reasonable care when acting, regardless of whether a duty to act exists, and not performing voluntary tasks in all instances, where there is no duty to act. Liability arises from misfeasance (e.g., Nelson v. Union Wire Rope Corp. (1964), 31 Ill. 2d 69, 199 N.E.2d 769), but not from nonfeasance (e.g., Chisolm v. Stephens (1977), 47 Ill. App. 3d 999, 365 N.E.2d 80, appeal denied (1977), 66 Ill. 2d 629). Nonfeasance may, however, give rise to liability if the plaintiff relied on the defendant to act (Chisolm, 47 Ill. App. 3d at 1007).

■ Thus, in the absence of evidence showing that using the revolving door exposed Mattice to an unreasonable risk of harm, the instant case appears to be one of nonfeasance. Despite customary assistance to building patrons by the elevator starters, defendants had no duty to assist Mattice. Had Roach assisted Mattice, he of course would have assumed the duty to act with reasonable care. Had Mattice relied on Roach to assist her, and had been injured, she would be entitled to recover. But there was no reliance. Mattice went through the revolving door without attempting to seek assistance, or seeking any of the available alternatives, such as going through the adjacent drugstore or using the ordinary doors on either side of the revolving door. Mattice exposed herself to any additional hazards posed by the revolving door. Further, although Mattice was 77 years old, she was neither disabled nor handicapped. Mattice carried a cane, which she used only on stairways, but was otherwise able-bodied. Following Mick and Chisolm, in the absence of exposure to an unreasonable risk of harm, the instant case was a situation of nonfeasance, which does not impose liability.

■ In summary, voluntary action requires reasonable care in the task undertaken, but customary action where there is no affirmative duty to act does not create the duty to act in all circumstances. To so hold would expand the law in a manner contrary to public policy; it is neither good law nor desirable public policy to hold that voluntary tasks undertaken to improve public services created per se a duty to continue those tasks without regard to whether they protected one

from an unreasonable risk to which a person is otherwise exposed. (*Mick v. Kroger Co.* (1967), 37 Ill. 2d 148, 152, 224 N.E.2d 863.) Mattice made no showing that she was exposed to an unreasonable risk of harm by going through the revolving door, nor did she rely on Roach's assistance in using the revolving door. Defendants assumed no affirmative duty to assist Mattice and therefore cannot be found liable on that theory.

■ Mattice next argues that the trial court erred in requiring expert testimony to show that the floor under the revolving door was worn. The trial court did not rule, however, that expert testimony was necessary to show that the floor was worn. The trial court ruled that because the effect of the worn floor on the operation of the door would not be readily observable to the layman's eye, or the operation of the door within the common knowledge of the average juror, expert testimony was necessary to show that the worn condition of the door made it unsafe.

Mattice maintains that expert testimony was unnecessary to prove the condition of the door, asserting that in *Hansen v. Henrici's, Inc.* (1943), 319 Ill. App. 458, 49 N.E.2d 737, no expert testimony was required to show the unsafe condition of a revolving door in which the plaintiff was injured. Regardless of whether an expert testified in *Hansen,* it is clear that the evidence on the condition of the door came from someone with knowledge of the weight, dimensions, and operation of the door. In the instant case, Mattice offered no such witness. Martin O'Gara, the Carlson Building superintendent, was unable to give the exact weight or dimensions of the door, and although prevented by a motion *in limine* from testifying as to the operation of the door, this court is directed to nothing that shows that O'Gara, or any witness offered by Mattice, possessed the expertise that the trial court in its discretion considered necessary.

Although no case discusses when the court must require expert testimony, cases discussing whether the court may allow experts to testify agree that the use of expert testimony is within the discretion of the trial court (*Phillips v. Shell Oil Co.* (1973), 13 Ill. App. 3d 512, 300 N.E.2d 771, *appeal denied* (1973), 54 Ill. 2d 597). The trial court articulated reasons for requiring expert testimony and did not abuse its discretion. Further, because Mattice offered no expert, the court properly refused to submit to the jury the issue of whether the revolving door was safe. Because the issue was not submitted, no jury instructions were necessary. The trial court therefore erred neither by barring testimony concerning the worn floor, nor by refusing to submit the issue to the jury.

■ The third issue raised by Mattice was whether the trial court erred in refusing several jury instructions that restated Evanston Building Code sections applicable to revolving doors. (Evanston Municipal Code, ch. 2, §4—2—1(A) (1979), BOCA Basic Building Code (8th ed. 1981) (the Building Code).) The trial court ruled that, as with the issue of the safety of the door, expert testimony concerning the Building Code was necessary. Because Mattice offered no expert on the Code sections, the trial court refused instructions it felt would confuse the jury. The trial court did not abuse its discretion to require expert testimony and to refuse jury instructions.

The jury was instructed that an applicable ordinance made building owners responsible for the safety of persons leaving their buildings, but even if the jury had found that the defendants had violated that ordinance, no evidence was offered to show that the violation was a proximate cause of Mattice's injury. No evidence showed that Mattice's injury was the result of an unsafe condition or operation of the door, or that a violation of the Building Code caused Mattice's injury. Therefore, the trial court was within its discretion to require expert testimony on Building Code violations and correctly refused jury instructions which, without testimony explaining the import of the Building Code, would have been confusing.

■ Mattice also argues that the court erred in refusing to allow her medical expert, Dr. Robbins, to testify that the injury in the Carlson Building created a bodily condition that caused Mattice's subsequent falls in her apartment building lobby in 1985 and in her bathroom in 1986. (See *Stephenson v. Air Products & Chemicals, Inc.* (1969), 114 Ill. App. 2d 124, 252 N.E.2d 366, *appeal denied* (1970), 42 Ill. 2d 585 (where an injury created a bodily condition making a subsequent injury more likely, the defendant, responsible for the first fall, was also liable for subsequent fall).) Mattice's testimony concerning the subsequent falls was insufficient to determine whether the falls were caused by the injury in the revolving door. Therefore the court should have allowed the testimony of Dr. Robbins because it would have been helpful to the jury. Dr. Robbins' testimony, however, was relevant only to the issue of damages, and because the jury properly returned a verdict for the defendants on the issue of liability, any error in refusing Dr. Robbins' testimony was harmless.

■ The remaining issues concern whether an oral instruction by the court, and remarks made by the court and defendants' counsel, were substantially prejudicial to Mattice. We hold that any error in giving the oral instruction was harmless, and the remarks were not prejudicial. Nor does their cumulative ·effect, argued in one sentence

by Mattice, require reversal, because the defendants were properly found to be not liable.

As to the argument that the trial court erred by orally giving the jury Illinois Pattern Jury Instructions, Civil, No. 36.01 (2d ed. 1971) (hereinafter IPI Civil 2d), which states, "[i]f you decide for the defendant on the question of liability, you will have no occasion to consider the question of damages," Mattice asserts that IPI Civil 2d No. 36.01 was discredited in *Misch v. Meadows Mennonite Home* (1983), 114 Ill. App. 3d 792, 449 N.E.2d 1356. *Misch* stated, however, that IPI Civil 2d No. 36.01, though reiterative and rather meaningless, was still proper.

■ Nor does Mattice's further argument that oral instruction by the trial court requires a new trial, because it violated section 2—1107 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1107), which requires the court to instruct the jury in writing only, unless the parties otherwise agree. Although giving an oral instruction without notifying the parties is improper, such action does not mandate reversal. (See *City of Danville v. Frazier* (1969), 108 Ill. App. 2d 477, 480, 248 N.E.2d 129.) Mattice asserts that the language of IPI Civil 2d No. 36.01 emphasized the defendants' absence of fault, and in effect told the jury to not consider damages. The language of the instruction does not indicate the prejudicial effect Mattice argues, however, because it merely instructs the jury to not consider damages if it finds that the defendants are not at fault. Further, the jury heard the instruction only once, and it was not reinforced by being given in writing. Therefore, the oral instruction, albeit improper, was not sufficiently prejudicial to reverse the judgment for defendants.

■ Mattice's additional argument that remarks by the defendants' counsel during closing argument were prejudicial is without merit. They were to the effect that a case was not won merely because someone could pay a filing fee, that the law required proof of certain facts in court. Counsel's remarks concerned the legal system in the abstract and were not intended, nor can they be reasonably construed, to reflect on Mattice, her attorney, or the evidence in the case. Reading the remarks in context, counsel's remarks were neither improper nor prejudicial.

■ Mattice also argues that the court made prejudicial remarks during the examination of a witness. While introducing a series of X rays showing the progress of Mattice's recovery after the injury, the judge remarked that the evidence was "tiring." Mattice claims that such a remark is reversible error, relying on *Hickey v. Chicago Transit Authority* (1964), 52 Ill. App. 2d 132, 201 N.E.2d 742, where the

244

comments by the court were among several errors whose cumulative impact required reversal, and *Gabosch v. Tullman* (1974), 21 Ill. App. 3d 908, 316 N.E.2d 226, where the court actually misconstrued testimony given by the witness. Misstating testimony may influence the jury's construction of the testimony, but the single remark that evidence is "tiring," which may describe its presentation, does not attach a meaning to the testimony for purposes of the case and should not have the same impact as a candid opinion as to what the testimony means. Thus, although it is wise to repeat *Hickey*'s admonition that the judge, as the dominant figure in the courtroom, must guard against inadvertent comments or attitude of belief or disbelief, which may prejudice the jury, the remark made by the court in the instant case was not so prejudicial as to require reversal.

In summary, the defendants assumed no duty to Mattice by customarily helping persons out the door. Any common law or statutory duty that may have been breached was not proven, with the expert testimony required in the court's discretion, to have proximately caused Mattice's injury. The remaining errors were insufficient to require reversal, being either *de minimis* or not affecting the issue of liability. Therefore, the judgment finding the defendants not liable is affirmed.

Affirmed.

CAMPBELL, P.J., and BUCKLEY, J., concur.