**Richard PYTLEWSKI, Sr., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**
**No. 96 C 6928.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 26, 1998.

Roger D. Rickmon, George M. Ferreti, Herschbach, Tracy, Johnson, Bertani & Wilson, Joliet, IL, for Plaintiff.

Samuel D. Brooks, Asst. U.S. Atty., Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Plaintiff Richard Pytlewski ("Pytlewski") has filed suit under the Federal Tort Claims Act against the United States of America ("the government") for injuries that he sustained in a slip and fall at the Lockport, Illinois Postal Store. The government has filed a motion for summary judgment. For the following reasons, the court grants the government's motion.

## I. BACKGROUND[1]

At approximately 4:30 p.m. on September 21, 1995, Pytlewski entered the Lockport, Illinois Postal Store. At that time, there was a "medium drizzle" outside. Before entering the store, Pytlewski walked across six feet of wet concrete sidewalk to the front door of the Lockport Postal Store. Pytlewski did not have an umbrella with him at the time.

As Pytlewski entered the Postal Store, he stepped on a rubber mat which was located just inside the door of the store and was lying flat on the floor. The mat was wet from people walking on it as they entered and exited the store; however, the mat was not "water logged." The floor of the Lockport Postal Store was also wet, which Pytlewski surmised was caused by people walking into the Postal Store. Pytlewski stepped off the mat, took three steps, and then fell to the floor.

Pytlewski was taken to St. Joseph Medical Center in Joliet, Illinois, where he was diagnosed with a fractured left ankle. The next day, September 22, 1995, he had surgery on his left ankle. He was released from St. Joseph Medical Center on September 27, 1995.

There is no evidence that any of the Lockport Postal Store employees ever mopped the entrance to the Lockport Postal Store on September 21, 1995. In fact, four Lockport Postal Store employees each testified at a deposition that he or she had not mopped the entrance area of the Lockport Postal Store on September 21, 1995 and/or that he or she did not remember anyone else doing so. In addition, one of the employees testified that the Lockport Postal Store has a wet floor sign on a mop bucket, which another employee testified was never placed in the lobby area on September 21, 1995.

United States Postal Service Maintenance Series Handbook MS–10 ("the MS–10 handbook") and United States Postal Service Housekeeping Postal Facilities Handbook MS–47 ("the MS–47 handbook"), which are published by the United States Postal Ser-

1. These undisputed facts are taken from the parties Local Rule 12(M) and 12(N) statements. Pytlewski admitted each fact contained in the government's 12(M) statement and submitted a statement of additional facts pursuant to Local Rule 12(N). For the purposes of its summary judgment motion, the government admitted each fact contained in Pytlewski's 12(N) statement.

vice, both contain guidelines or procedures to be followed by United States postal employees when dealing with wet floors. There is no evidence that any Lockport Postal Store employee had ever received a copy of, had read, or had been told about the MS–10 or MS–47 handbook. Four Lockport Postal Store employees whose duties include housekeeping functions each testified at a deposition that he or she had never received any written materials concerning floor safety or general lobby maintenance.

On October 23, 1996, Pytlewski filed suit against the United States of America under the Federal Tort Claims Act ("FTCA"). Pytlewski's complaint alleges that

> [o]n September 21, 1995, Defendant's employees were negligent in that (a) they failed to remove, in a timely manner, water which was present on the floor and on a rubber mat which was situated inside the entrance to the post office building; (b) failed to use reasonable care in the maintenance of the floor and rubber mat; and (c) allowed the floor and rubber mat to remain in a slippery, hazardous, and unsafe condition.

(Compl.¶ 8.) This court has jurisdiction over the case pursuant to the provisions of 28 U.S.C. § 1346 and the FTCA, 28 U.S.C. §§ 2671–80.

## II. *DISCUSSION*

### A. *Standard for deciding motion for summary judgment*

A motion for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A genuine issue of material facts exists for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir.1995).

The burden is on the moving party to show that no genuine issues of material fact exist. *Anderson,* 477 U.S. at 256; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party presents a *prima facie* showing that he is entitled to judgment as a matter of law, the non-moving party may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Anderson,* 477 U.S. at 256–57; *Celotex,* 477 U.S. at 324; *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989).

### B. *Pytlewski's negligence claim under the Federal Tort Claims Act*

Under the FTCA, the government's liability is determined in accordance with the law of the place where the injury occurred. 28 U.S.C. § 1346(b); *Buscaglia v. United States,* 25 F.3d 530, 534 (7th Cir.1994). As Pytlewski's accident occurred in Illinois, Illinois law governs.

Pytlewski's action against the government is for negligence. In Illinois, to succeed in a negligence action, the plaintiff must prove that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury. *Rhodes v. Illinois Cent. Gulf R.R.,* 172 Ill.2d 213, 216 Ill.Dec. 703, 665 N.E.2d 1260, 1267 (1996) (citing *Vesey v. Chicago Hous. Auth.,* 145 Ill.2d 404, 164 Ill. Dec. 622, 583 N.E.2d 538 (1991)). Whether the defendant owes the plaintiff a duty is a question of law for the court to decide. *Id.* (citing *Gouge v. Central Ill. Pub. Serv. Co.,* 144 Ill.2d 535, 163 Ill.Dec. 842, 582 N.E.2d 108, 111 (1991)). In deciding whether a duty exists under the facts of the case, the court must determine "whether the parties stood in such a relationship to each other that the law imposes an obligation on one to act for the protection of the other." *Id.* (citing *Gouge,* 163 Ill.Dec. 842, 582 N.E.2d at 111). If the plaintiff fails to establish the existence of a duty, summary judgment for the defendant is proper. *Espinoza v. Elgin, Joliet & E. Ry.,*

165 Ill.2d 107, 208 Ill.Dec. 662, 649 N.E.2d 1323, 1326 (1995).

In this case, the only reasonable inference from the record is that Pytlewski slipped on a natural accumulation of water that was on the Lockport Postal Store.[2] The issue before the court is whether Pytlewski has established that the government had a duty to remove the water or to warn of its existence. The government argues that it did not owe such a duty to Pytlewski because, pursuant to Illinois' natural accumulations rule, a landowner does not have a duty to remove the tracks or residue left by customers who have walked through natural accumulations of water. Pytlewski argues that notwithstanding the natural accumulations rule, the government owed him a duty to remove the water or to warn of its existence because it voluntarily assumed the duty to do so by adopting the MS–47 and MS–10 handbooks.

### 1. The natural accumulations rule

■ The government argues that, pursuant to the natural accumulations rule, it did not owe Pytlewski a duty to remove the water from the floor or to warn of its existence. In Illinois, it is well settled that a landowner does not have a duty to remove the tracks or residue left by customers who have walked through natural accumulations of water, slush, or snow. *E.g., Stypinski v. First Chicago Bldg. Corp.*, 214 Ill.App.3d 714, 158 Ill.Dec. 604, 574 N.E.2d 717, 718 (1991); *Wilson v. Gorski's Food Fair*, 196 Ill.App.3d 612, 143 Ill.Dec. 477, 554 N.E.2d 412, 414 (1990); *Lohan v. Walgreens Co.*, 140 Ill. App.3d 171, 94 Ill.Dec. 680, 488 N.E.2d 679, 680–81 (1986); *Torres v. Wal–Mart Stores Inc.*, No. 93 C 3376, 1994 WL 23076, at *2 (N.D.Ill. Jan.21, 1994) (applying Illinois law in a diversity-of-citizenship case); *Johansen v. United States*, No. 92 C 5296, 1993 WL 338185, at *2 (N.D.Ill. Aug.31, 1993) (applying Illinois law in a Federal Tort Claims Act case). There may be liability, however, if the plaintiff establishes that his injuries resulted from an unnatural accumulation of ice, snow, or water or from a natural condition which was aggravated by the landowner. *E.g., Stypinski*, 158 Ill.Dec. 604, 574 N.E.2d at 718;

*Wilson*, 143 Ill.Dec. 477, 554 N.E.2d at 414; *Handy v. Sears, Roebuck & Co.*, 182 Ill. App.3d 969, 131 Ill.Dec. 471, 538 N.E.2d 846, 848 (1989); *Bernard v. Sears, Roebuck & Co.*, 166 Ill.App.3d 533, 116 Ill.Dec. 945, 519 N.E.2d 1160, 1161–62 (1988). Where there is no liability for falls resulting from natural accumulations of water, there is no duty to warn of such conditions. *E.g., Handy*, 131 Ill.Dec. 471, 538 N.E.2d at 847; *Newcomm v. Jul*, 133 Ill.App.2d 918, 273 N.E.2d 699, 701 (1971); *Johansen*, 1993 WL 338185, at *3.

■ In *Lohan, Bernard*, and *Handy*, cases involving facts analogous to the case at bar, the Illinois appellate court affirmed summary judgments granted in favor of the defendants pursuant to the natural accumulations rule. In *Lohan*, the plaintiff had entered a common entranceway to the defendants' store on a rainy day. As she entered, she noticed two rubber mats on each side of the front door. Both the mats and the concrete walk that led up to the mats were wet. The plaintiff entered the door and stepped onto a mat. At that time, she noticed that the surface inside in the common entranceway was also wet. The plaintiff stepped off the mat onto the floor and fell. *Lohan*, 94 Ill.Dec. 680, 488 N.E.2d at 680. The appellate court affirmed the district court's grant of summary judgment for the defendants, holding that the defendants had no duty to remove the natural accumulation of water that had been tracked into the entranceway. *Id.* 488 N.E.2d at 680–81. The appellate court also rejected the argument that the defendant's duty to remove the water "arose from defendants' prior voluntary undertaking to lay down additional safety mats when the floor was wet," explaining that "where the accumulation is a natural one there is no duty to continue a voluntary undertaking to remove it." *Id.* at 682.

*Bernard* also involved a slip-and-fall case that took place at the defendant's store. In *Bernard*, the plaintiff entered the vestibule of the defendant's store. When she entered, the plaintiff noticed that the floor was "all water." The plaintiff then entered the store and stepped on a rug that was twenty feet

---

**2.** *See infra* Part II.B.1 (explaining why this is the only reasonable inference).

long. She walked the length of the rug, which was saturated. When she reached the end of the rug, she took one or two steps on the bare floor and then fell. *Bernard,* 116 Ill.Dec. 945, 519 N.E.2d at 1161. The appellate court affirmed the trial court's granting of the summary judgment for the defendant, determining that the case was "factually almost undistinguishable from *Lohan.*" The court explained that summary judgment was appropriate because the plaintiff had failed to present evidence that the water on which she slipped was either an unnatural accumulation or a natural condition aggravated by the defendant. The appellate court also rejected the plaintiff's argument that the defendant was liable for her injuries since it had "voluntarily undertook to remove or prevent the accumulation of water on the day in question by use of the rug" since the plaintiff failed to present any evidence regarding the condition or effect of the rug. *Id.* 519 N.E.2d at 1161–63.

*Handy* also involved a slip-and-fall case that took place in the defendant's store. In *Handy,* the plaintiff slipped and fell on water that was on the floor of the defendant's store. *Handy,* 131 Ill.Dec. 471, 538 N.E.2d at 847. The appellate court affirmed the trial court's granting of summary judgment, noting that the case was "almost factually indistinguishable from *Lohan* and *Bernard.*" The appellate court explained that the defendant was not liable because the plaintiff had failed to present evidence which would allow the trier of fact to infer that the water inside the store was either an unnatural accumulation or a natural condition aggravated by the defendant. The appellate court rejected the plaintiff's request for the court to overturn its previous decisions in *Lohan* and *Bernard.* *Id.* 538 N.E.2d at 848–49.

The undisputed facts in this case are analogous to the facts in *Lohan, Bernard,* and *Handy.* There was a "medium drizzle" falling outside when Pytlewski entered the Lockport Postal Store. Before entering the store, Pytlewski had walked across six feet of wet concrete without an umbrella. When Pytlewski entered the store, he stepped on a rubber mat which was lying flat on the floor. At the time, the rubber mat was wet but was

not "water logged." After stepping off the mat, Pytlewski took three steps and then fell to the floor, which was also wet at the time. Pytlewski testified at his deposition that (1) he surmised the mat and floor were wet from customers entering the store and (2) he fell "cause it was wet."

Pytlewski has not argued or offered any evidence that (1) the water on the Postal Store floor was anything but a natural accumulation; (2) the government in any way aggravated a natural condition; (3) the floor surface was unusually or unreasonably dangerous because of the nature of its material or construction; or (4) the mat itself, and not the water on the floor, caused his fall. Thus, the only reasonable inference from the record is that Pytlewski slipped on the tracked-in water on the floor of the Lockport Postal Store. The tracked-in water, whether it was on the floor or the rubber mat, was a natural accumulation. *See Wilson,* 143 Ill.Dec. 477, 554 N.E.2d at 415; *Roberson v. J.C. Penney Co.,* 251 Ill.App.3d 523, 191 Ill.Dec. 119, 623 N.E.2d 364, 367 (1993); *see also Shoemaker v. Rush–Presbyterian–St. Luke's Med. Ctr.,* 187 Ill.App.3d 1040, 135 Ill.Dec. 446, 543 N.E.2d 1014, 1016 (1989) ("While plaintiff need not prove her case at the summary judgment stage, she is required to come forward with some evidentiary facts or material to show that the water upon which she slipped was of unnatural origin."). Thus, as in *Lohan, Bernard,* and *Handy,* pursuant to the natural accumulations rule, the government had no duty to remove the tracked-in water or to warn Pytlewski of its presence.

## 2. The voluntary undertaking theory of liability

Pytlewski does not dispute that, under Illinois law, a landowner has no duty to remove natural accumulations of water from his property. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 6.) Further, Pytlewski does not argue that the water on the Lockport Postal Store was not a natural accumulation or that the natural accumulations rule should not apply to the facts of his case. Instead, Pytlewski argues that, notwithstanding the natural accumulations rule, the government had a duty to remove the tracked-in water because

it voluntarily assumed the duty to do so when it "adopted" the MS–47 and MS–10 handbooks.

■ "Pursuant to the voluntary undertaking theory of liability, one who undertakes, gratuitously or for consideration, to render services to another is subject to liability for bodily harm caused to the other by one's failure to exercise due care in the performance of the undertaking." *Rhodes,* 216 Ill.Dec. 703, 665 N.E.2d at 1273. However, the duty of care to be imposed on the defendant is limited to the extent of the undertaking. *Id.* Whether such a duty has been voluntarily undertaken is a question of law for the court to decide. *Jackson v. Hilton Hotels Corp.,* 277 Ill.App.3d 457, 214 Ill.Dec. 31, 660 N.E.2d 222, 228 (1995).

■ Pytlewski argues that the government voluntarily assumed a duty to remove the natural accumulation of water or to warn of its existence by publishing the MS–47 and MS–10 handbooks. There is no evidence (1) that Pytlewski was aware of the handbooks before he walked into the Lockport Postal Store on September 21, 1995 and that he reasonably relied on the government to follow the procedures outlined in those handbooks or (2) that the government followed the procedures in the handbooks on September 21, 1995, but did so negligently. Therefore, Pytlewski's argument that the government voluntarily assumed a duty to remove the tracked-in water is based solely on the fact that it published the MS–47 and MS–10 handbooks.

The court rejects Pytlewski's argument that the MS–47 and MS–10 handbooks created a legal duty on the government's part to remove the tracked-in water. Analogous arguments have been made to, and rejected by, the Illinois appellate courts. *See Blankenship v. Peoria Park Dist.,* 269 Ill.App.3d 416, 207 Ill.Dec. 325, 647 N.E.2d 287, 291 (1995) (rejecting plaintiff's argument that the defendant's internal rules requiring one lifeguard to remain on duty at all times created a legal duty to have one lifeguard on duty); *Fillpot v. Midway Airlines, Inc.,* 261 Ill.App.3d 237, 198 Ill.Dec. 775, 633 N.E.2d 237, 242 (1994) (rejecting plaintiff's argument that defendant's policy manual requiring the clearing of walkways created a legal duty on defendant's part to protect plaintiff from natural accumulations); *Wilson,* 143 Ill.Dec. 477, 554 N.E.2d at 416 (rejecting plaintiff's argument that defendants' "maintenance or safety program" created a duty on defendants' part to remove tracked-in water from inside defendants' store); *Mattice v. Goodman,* 173 Ill.App.3d 236, 123 Ill.Dec. 6, 527 N.E.2d 469, 472 (1988) (holding that the defendant's employment of employees who, in accordance with their job descriptions, customarily assisted elderly persons through a revolving door did not create a duty on the defendant's part to assist elderly people through the door).

More importantly, an analogous argument has been made to, and flatly rejected by, the Supreme Court of Illinois. *See Rhodes,* 216 Ill.Dec. 703, 665 N.E.2d at 1272–73. In *Rhodes,* the plaintiff brought a negligence action against the defendant, alleging that the defendant should be liable for failing to provide assistance to the plaintiff when he was found injured in the defendant's building. *Id.* 665 N.E.2d at 1263. In arguing that a duty existed, the plaintiff contended that even if the law imposed no duty on the defendant to provide assistance to the plaintiff, such a duty was created by the defendant's own internal procedures. *Id.* at 1272. The Supreme Court of Illinois flatly rejected the plaintiff's argument. *Id.* at 1273. The court explained:

> Whether a legal duty exists is a question of law and is determined by reference to whether the parties stood in such a relationship to each other that the law imposes an obligation on one to act for the protection of the other. Where the law does not impose a duty, one will not generally be created by a defendant's rules or internal guidelines. Rather, it is the law which, in the end, must say what is legally required.

*Id.* at 1272 (citations omitted). The court then stated that it declined to hold that any of the defendant's internal procedures created a duty on the defendant's part to provide aid to the plaintiff when the law did not otherwise impose such a duty. *Id.*

Pytlewski does not address the above line of cases in his brief opposing the govern-

ment's motion for summary judgment. Instead, Pytlewski relies on the cases of *Nelson v. Union Wire Rope Corp.*, 31 Ill.2d 69, 199 N.E.2d 769 (1964), and *Martin v. McDonald's Corp.*, 213 Ill.App.3d 487, 157 Ill. Dec. 609, 572 N.E.2d 1073 (1991), to support his argument that the MS–47 and MS–10 handbooks created a duty to remove the water. Neither *Nelson* nor *Martin*, however, stand for the broad proposition that a duty is created simply by a defendant's internal policies or rules. In both *Nelson* and *Martin*, the court found that the defendant's duty was created by the defendant's voluntary course of conduct, not simply by the defendant's internal rules or guidelines. *See Nelson*, 199 N.E.2d at 773–80; *Martin*, 157 Ill.Dec. 609, 572 N.E.2d at 1076–78.

The government, on the other hand, argues that *Rhodes* and the cases cited therein support a finding that the MS–47 and MS–10 handbooks did not create a legal duty on the government's part. The court agrees. In this case, the law placed no duty on the government to remove the natural accumulation of tracked-in water. Pytlewski has given the court no reason to depart from the general rule that "[w]here the law does not impose a duty, one will not generally be created by a defendant's rules or internal guidelines." *Rhodes*, 216 Ill.Dec. 703, 665 N.E.2d at 1272. The mere fact that the United States Postal Service publishes the MS–47 and MS–10 handbooks, without more, is insufficient to show that the government voluntarily assumed a duty to protect postal customers from natural accumulations of water, ice, or snow.

Further, sound policy reasons support the court's finding that the MS–47 and MS–10 handbooks did not create a duty on the government's part to remove the tracked-in water. Many places of business have maintenance manuals or policies which suggest guidelines or procedures to be followed to alleviate the dangers of natural accumulations. A finding that such a manual or policy in and of itself created a legal duty on the part of the business to remove natural accumulations would discourage businesses from producing or formulating such guidelines, which would be detrimental to the general

public's best interest. Such a finding would also penalize those businesses which had made a laudable effort to formulate guidelines in an attempt to alleviate the dangers of natural accumulations when the law imposed no such duty. Finally, such a finding would also create a new exception to Illinois' natural accumulations rule, an exception which has the potential to swallow the rule almost whole. It is not this court's role to create such a broad exception. *See Watson v. J.C. Penney Co.*, 237 Ill.App.3d 976, 178 Ill.Dec. 929, 605 N.E.2d 723, 725–26 (1992) (explaining that if the sixty-year-old natural accumulations rule is to be overruled, it should be by the Illinois legislature or the Supreme Court of Illinois). Accordingly, this court declines to hold that the MS–47 or the MS–10 handbooks in and of themselves created a duty on the government's part to remove the tracked-in water.

Pytlewski does not argue that the government took any other action, other than the publication of the MS–47 and MS–10 handbooks, which would support a finding that the government voluntarily assumed a duty to remove the water from the floor. This is probably because there were no other actions taken by the government which would support a finding.

■ There is no evidence that anyone mopped the floor on the day that Pytlewski fell. In fact, four Lockport Postal Store employees each testified at a deposition that he or she had not mopped the entrance area of the Lockport Postal Store on September 21, 1995 and/or that he or she did not remember anyone else doing so. Even if the government had mopped the floor on other days in an attempt to remove natural accumulations, the government was under no duty to continue such action. *E.g., Lohan*, 94 Ill.Dec. 680, 488 N.E.2d at 682; *Wilson*, 143 Ill.Dec. 477, 554 N.E.2d at 415.

■ The court notes that at some time the government placed a rubber mat at the entrance of the Postal Store. There is no evidence, however, that the mat was placed there to protect Postal Store employees from the dangers of natural accumulations. Moreover, there is no evidence that (1) the government failed to maintain the mats with reason-

able care; (2) the government's use of the mat was negligent; (3) the mat caused Pytlewski's fall; or (4) the mat somehow created an unnatural accumulation or aggravated a natural condition. Thus, the court finds that no liability on the government's part arose from the placement of the rubber mat at the Postal Store's entry. *See Roberson,* 191 Ill. Dec. 119, 623 N.E.2d at 366 (holding that the defendant had not assumed a duty to remove all tracked-in water from its store by placing mat outside its entrance because there was no evidence the defendant had installed the mats to absorb tracked-in water); *Torres,* 1994 WL 23076, at *2 (stating that a landowner has no duty "to ensure that mats at entranceways are kept dry").

 Pytlewski correctly notes that liability under a voluntary undertaking theory can result from nonfeasance (not performing a voluntary task when there is no duty to act) as well as misfeasance (failing to exercise due care when performing a voluntary undertaking). *See Stephen,* 200 Ill.Dec. 658, 635 N.E.2d at 1005; *Mattice,* 123 Ill.Dec. 6, 527 N.E.2d at 472. However, nonfeasance only gives rise to liability if the plaintiff shows (1) that the defendant had voluntarily assumed a duty to act and (2) that the plaintiff relied on the defendant to act. *See* RESTATEMENT (SECOND) OF TORTS § 323; *Vesey,* 164 Ill.Dec. 622, 583 N.E.2d at 545; *Jackson v. Hilton Hotels Corp.,* 277 Ill.App.3d 457, 214 Ill.Dec. 31, 660 N.E.2d 222, 228–29 (1995); *Chisolm v. Stephens,* 47 Ill.App.3d 999, 7 Ill.Dec. 795, 365 N.E.2d 80 (1977).

In this case, there is nothing that the government did from which an inference can be made that the government voluntarily assumed a duty to remove the tracked-in water from the floor. Further, Pytlewski has neither argued nor submitted any evidence which would support a finding that Pytlewski relied on the government to mop, put out signs, or otherwise follow the procedures outlined in the MS–47 or MS–10 handbooks. Thus, there is simply no evidence of reliance in this case. *See, e.g., Stephen,* 200 Ill.Dec.

658, 635 N.E.2d at 1005; *Chisolm,* 7 Ill.Dec. 795, 365 N.E.2d at 86–87. Accordingly, the court finds that the government's failure to act did not give rise to liability in this case.

In sum, the government did not assume a duty to remove the natural accumulation of water from inside the Lockport Postal Store. No such duty was created by the MS–47 and MS–10 handbooks. Further, no such duty was created by anything the government did or failed to do. Therefore, the government cannot be held liable for Pytlewski's injuries on a voluntary undertaking theory.[3]

## III. CONCLUSION

Pytlewski has failed to establish that the government owed him any duty to remove the tracked-in water from the Lockport Postal Store floor or to warn of its existence. Under the natural accumulations rule, the government had no duty to remove the tracked-in water from the Postal Store floor. Further, there is no evidence that the government voluntarily assumed a duty to do so. Finally, because the government had no duty to remove the water, it had no duty to warn Pytlewski of its existence. Consequently, the government cannot be held liable for Pytlewski's injuries.

Accordingly, the court grants defendant United States of America's motion for summary judgment. The court enters final judgment in this case in favor of defendant United States of America and against plaintiff Richard Pytlewski.

---

**3.** In his Local Rule 12(N) statement, Pytlewski makes two references to the lease entered into by the United States Postal Service for the Lockport Postal Store. (Pl.'s Local R. 12(N) Statement ¶¶ 9, 53.) Pytlewski, however, has made no argument that a duty was created by the provisions of the lease. The court, therefore, does not address that issue.